UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22-CR-00061 RLW |
| | ) |
| JAMES Q. JENKINS, | ) |
| | ) |
| Defendant. | ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1.     PARTIES:**

The parties are the defendant James Q. Jenkins, represented by defense counsel Joseph Flees, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2.     GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts One and Two of the Indictment, the United States agrees that no further federal prosecution will be brought in this District relative to the facts underlying the charges set forth in the Indictment, of which the Government is aware at this time.

The parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case. The Government agrees to request a

1

sentence of one hundred and eighty months (180) months of imprisonment followed by a period of lifetime on supervised release and applicable restitution and assessments. The parties further agree that the defendant may request any statutorily-available sentence that is within or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein. The parties understand that the Court is neither a party to nor bound by the Guideline's recommendations agreed to in this document nor the sentencing recommendation of the parties.

The defendant knowingly and voluntarily waives any right, title, and interest in all items (including all data contained therein) seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States, including, but not limited to: all electronics, digital items and other items seized by law enforcement in the course of the investigation of the offenses giving rise to the charge and presently in the custody of law enforcement. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

3.  **ELEMENTS:**

As to Count One, the defendant admits to knowingly violating Title 18, United States Code, Section 2422(b), coercion and enticement of a minor, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are (1) the defendant knowingly attempted to persuade, induce, entice or coerce an individual (2) who had not attained the age of eighteen years (3) to engage in sexual activity (4) for which any person can be charged with a criminal offense and (5) did so utilizing the internet, a means of interstate and foreign commerce.

As to Count Two, the defendant admits to knowingly violating Title 18, United States Code, Section 1470, transfer of obscene material to minors, and admits there is a factual basis for the plea and further understands that the elements of the crime are (1) defendant knowingly transferred (2) using any means or facility of interstate or foreign commerce, including by computer or internet (3) obscene material, (4) which was material that the average person, applying contemporary community standards, would find is erotic, appeals to a degrading, unhealthy or morbid interest in sex or that describes ultimate sexual acts, excretory functions, masturbation and that lacks serious literary, artistic, political or scientific value, (5) to an individual (6) who the defendant knew had not attained the age of sixteen (16) years.

4.  **FACTS:**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Between the dates of October 1, 2020, and September 1, 2021, the defendant was employed as a school counselor for a high school located in St. Louis County, Missouri. Multiple female students who attended that school were interviewed by law enforcement during the course of the investigation that gave rise to the Indictment of the defendant. Each of these female students were in contact with the defendant in his capacity as the school counselor and were seeking guidance from him as their school counselor.

Student 1 is the victim of the charges in the federal indictment. The defendant approached Student 1 at school and told her that he would like to get to know her better. Student 1 began to go to the defendant's counseling office where they would paint or play board games. The defendant also asked Student 1 to complete a trauma binder. The defendant told Student 1

that growing up in a Hispanic household, she would experience "sexism" and "toxicness" and that he could help support her through that. The defendant began to communicate with Student 1 on her personal cellular telephone and through her social media accounts. The defendant was aware that Student 1 was fifteen years of age. The defendant told Student 1 that he was very sexual. Over internet-based digital communications, the defendant began to ask Student 1 to send him pictures of herself, ultimately requesting that she send him nude pictures. Via the internet, the defendant sent Student 1 pictures of himself nude, to include multiple images of his exposed penis and videos of him masturbating while saying Student 1's name and stating that he loved her. In one video sent to Student 1 by the defendant via the internet, the defendant is exposing his penis and masturbating as he is stating in the video "I want to bend you over," "I want to watch this black [penis] slide in that west Latina {vagina}..." The defendant would describe to Student 1 fantasies that he claimed he had about her and told her he would like to take her virginity. The defendant told Student 1 that he never felt about anyone else the way he felt about her. The defendant told Student 1 never to tell anyone about their communications. Law enforcement observed digital communications from the defendant to Student 1 that occurred in July and August of 2021. A small portion of those digital internet-based communications are set forth below. Graphic and indecent terms have been replaced in a manner not altering the meaning of the communications:

| | |
|---|---|
| Jenkins: | I'd like to dress you as a doctor and…Nope. Stay the course James. |
| Jenkins: | Have you examine me. Touch me. Feel me. Put your lips on me. Whatever you want. Those lips from the videos. |
| Jenkins: | Without the glasses to me you look hot. Like I wanna see you in a bra and panties and heels |
| | |
| Jenkins: | I almost sent you a [penis] pic. I'm so hard enough |
| Jenkins: | You want me too? |
| Jenkins: | I want to lick you |
| Jenkins: | Your [vagina]. Your stomach. Your inner thighs |

| | |
|---|---|
| Jenkins: | Can I feel the panties on your ass? |
| Jenkins: | Can I touch your inner thighs? |
| Jenkins: | Can I test and see if you're wet. Put a finger between your [vagina] lips? |
| Jenkins: | Could I ask you to grab my [penis]? Would you |
| Jenkins: | Would you ever put it in your mouth? Or not |
| Jenkins: | That's ok. I'm glad you haven't |
| Jenkins: | I'd love to teach you. Because you're mmm maybe we'll experience it together for your first time. I don't want you to ever feel bad about having little experience it's attractive |
| Jenkins? | Can I see a picture of your panties and your legs. How they look on your [vagina]? |
| Jenkins: | I want to bend you over mami |
| Jenkins: | Yes do you know what doggystyle is? |
| (Jenkins sends a photo of two adults engaging in sex) | |
| Jenkins: | Haha sorry is that to explicit? |
| Jenkins: | I wanna do that with you |
| Jenkins: | Yeah I have many things I want to do to you |
| (Jenkins sends a photo of a male performing oral sex on a female) | |
| Jenkins: | I want to spread your legs and lick you till you can't take it anymore? You there? |
| Jenkins: | I go back and forth between. I love her. And. I want to [have sex with] her like I've never wanted to [have sex with] anyone in my life. But you're [f---ing] 15!!!!!!! |

Law enforcement observed digital communications from the defendant to Student 1 that occurred in July and August of 2021. These digital communications contained images that had been taken by Student 1 at the direction of the defendant during communications that the defendant and Student 1 had over the internet and cellular telephone devices. The images involving the lascivious display of Student 1 in her bra and underwear and of the breasts of Student 1. The images were sent to and receive by the defendant via the internet.

Student 2 saw the defendant for counseling multiple times per week during high school. She described that the defendant initially approached her in the school lunchroom and suggested she should come meet with him. When she met with him, he asked questions about her personal

5

life. He asked her to complete a trauma binder, which he said he used to help kids coping with difficult issues. Student 2 described how the defendant began to compliment her breasts and buttocks and that he told her she was special, beautiful and that he cared about her. The defendant progressed to telling Student 2 that she turned him on and looked sexy. Student 2 further described that the defendant would suggest "games" while in his counseling office at the school such as whether Student 2 was brave enough to unbutton her shirt in his office. The defendant began texting Student 2 and communicating with her via her personal cellular telephone. The defendant communicated to Student 2 that he wanted to engage in phone sex with her. The defendant told Student 2 not to report him because he would lose his job.

Student 3 became acquainted with the defendant while a student at the high school. Student 3 described that she was having challenges at home and began meeting with the defendant as he was the school counselor. The defendant began communicating with Student 3 in a sexual manner, sending her images of his penis and asking her to touch herself and to send him sexual pictures. The defendant engaged in sexual conduct with Student 3 while she was his student at the high school. In the first instance, Student 3 reported that she told the defendant "no" in regard to sexual contact, and that he did not stop until she was able to physically push him off of her. The defendant denies that his sexual intercourse with Student 3 was without consent or that it involved forcible compulsion. She experienced pain and bleeding as a result. The defendant engaged in sexual contact with Student 3 multiple further times while she was a student at the high school where the defendant was employed, sometimes Student 3 and the defendant left school early to engage in sexual conduct.

Student 4 was also interviewed by law enforcement. She described that initially the defendant was very friendly which she thought was okay because his job was to counsel

6

students. Student 4 said she began counseling with the defendant because he told her that another teacher had recommended it. Student 4 recalled the defendant asking her at one time during school to take off a cardigan and give a spin in the lace top she had been wearing under the cardigan. Student 4 described that the defendant was very interested in her personal issues and would ask her to describe sexual acts. Student 4 described that the defendant had her complete a trauma binder and that he would validate her feelings and make her feel good about herself. She described that he would then turn on "predator mode" and would bring up inappropriate topics. The defendant also made arrangements to smoke marijuana with Student 4. Law enforcement observed the following communications to Student 4 from the defendant in July of 2021:

| Jenkins: | It's Jenkins |
| --- | --- |
| Jenkins: | Wanna do it at my apartment or does that make you uncomfortable? I won't do anything stupid I promise |
| Jenkins: | You don't do anything crazy that night either. I know you but I don't know you |
| Jenkins: | Oh and you can't tell anyone we smoked together |
| Jenkins: | I'd get fired |
| Jenkins: | Lose my job |
| Jenkins: | Kids lose their home |
| Jenkins: | Do you know those Spanish dances? |
| Jenkins: | Some of them are veery sensual |
| Jenkins: | You know those |
| Jenkins: | Can you teach me one of those? |
| Jenkins: | It's just a dance right |
| Jenkins: | I'm kidding I just wanted to see your reaction |
| Jenkins: | Hahah well I knew you'd say no cause I'm your counselor |
| Jenkins: | Who wants to dance like that with their old counselor |
| Jenkins: | Dammit [name of Student 4] I'm high and I'm trying to flirt with you and you're not making it easy |
| Jenkins: | Forget I said any of this in the morning!!! |

During the course of the law enforcement investigation, about six more students reported inappropriate behavior by the defendant to include commenting about their bodies and physical

7

appearance, communicating with them on their personal cellular telephones and social media accounts, communicating with them outside of school hours, trying to make plans with them outside of school, showing them sexual videos, taking his shirt off, calling them by pet names, and touching them in a manner that was inappropriate and uncomfortable. Teachers and administrators at the high school where the defendant was employed expressed concerns about his behavior. In particular, school personnel were concerned that the defendant put off and delayed seeing male students in need of counseling, while demonstrating alarming familiarity and frequency of contact with certain female students. The defendant was counseled about this inequity and about appropriate boundaries with students.

In the Summer of 2021, the defendant quit his counseling position with the high school in St. Louis County. He informed the school that it was because his mother was ill and that he needed more time to care for her. When the defendant's criminal activities came to light, an administrator at the high school became aware that the defendant had tried to gain employment as a counselor with an elementary school subsequent to leaving the high school. The law enforcement investigation also revealed that the defendant worked for the St. Joseph, Missouri School District previously and had been counseled and put on administrative leave due to inappropriate behavior with female students.

The Internet was, and is, a computer communications network using interstate and foreign lines to transmit data streams, including data streams used to store, transfer and receive graphic files. The Internet is a means and facility of interstate and foreign commerce.

5.  **STATUTORY PENALTIES:**

The defendant fully understands that for Count One, the possible penalty provided by law for the crime of coercion and enticement of a minor in violation of 18 U.S.C. §2422(b), to which

the defendant is pleading guilty, is imprisonment for a period of not less than ten (10) years and not more than life, a fine of not more than $250,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than five (5) years nor more than life.

The defendant fully understands that for Count Two, the possible penalty provided by law for the crime of transfer of obscene material to minors in violation of 18 U.S.C. §1470, to which the defendant is pleading guilty, is imprisonment for a period of not more than ten (10) years, a fine of not more than $250,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not more than three (3) years.

Per 18 U.S.C. §§ 2429, 3663 and 3663A, defendant fully understands that, in addition to other civil or criminal penalties provided by law, the Court shall order restitution directing the defendant to pay the victim (through appropriate Court mechanism) the full amount of her losses as determined by the Court that were incurred or are reasonably projected to be incurred by the victim.

Per 18 U.S.C. §3014, defendant fully understands that, in addition to other civil and criminal penalties provided by law, the Court shall order a special assessment of $5,000 on any non-indigent defendant convicted of an offense under Chapter 117 (related to transportation for illegal sexual activity and related crimes, including, but not limited to, 18 U.S.C. 2422(b)).

Per 18 U.S.C. §3013, defendant fully understands that, in addition to other civil and criminal penalties provided by law, the Court shall order a special assessment of $100 per count of conviction.

6. **U. S. SENTENCING GUIDELINES: 2018 MANUAL:**

The defendant understands that this offense is affected by the U. S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that may apply.

A. **Offense Conduct:**

(1) **Count One, Coercion and Enticement of a Child:**

a. **Chapter 2 Base Offense Level**: The parties agree that the base offense level is 28, as found in Section 2G1.3(a)(3).

b. **Chapter 2 Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics may apply:

(i) two (2) levels should be added pursuant to 2G1.3(b)(1)(B) because the defendant was in the custody, care, or supervisory control of the defendant, and

(ii) two (2) levels should be added pursuant to 2G1.3(b)(3) because the offense involved the use of a computer or an interactive computer service to entice, encourage, offer and solicit a person to engage in prohibited sexual conduct with the minor.

(2) **Count Two, Transfer of Obscene Material to Minors:**

a. **Chapter 2 Base Offense Level**: The parties agree that the base offense level is 10, as found in Section 2G3.1(a).

b. **Chapter 2 Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics apply:

10

        (i) six (6) levels should be added pursuant to 2G3.1(b)(1)(D) because the offense involved distribution to a minor that was intended to persuade, induce, entice, or coerce the minor to engage in any illegal activity, and

        (ii) two (2) levels should be added pursuant to 2G3.1(b)(3) because the offense involved the use of a computer or an interactive computer service.

**B.    Chapter 3 Adjustments:**

        (1)    The offense level is thirty-two (32) as to Count One and eighteen (18) as to Count Two. Pursuant to 3D1.2, the parties agree that Counts One and Two do Group and the combined offense level as per 3D1.1, 3D1.3 and 3D1.4 is thirty-two (32).

        (2)    The Government contends that two (2) levels should be added pursuant to 3B1.3, because the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense. The defendant reserves the right to argue that 3B1.3 does not apply.

        (3)    The parties agree that three (3) levels should be deducted pursuant to 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the Government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the Government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

  **C.** **Chapter 4 Adjustments**: The Government contends that five (5) levels should be added pursuant to 4B1.5(b)(1), because the defendant engaged in a pattern of activity involving prohibited sexual conduct. The defendant reserves the right to argue that 4B1.5(b)(1) does not apply.

  **D.** **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is likely to be between twenty-nine (29) and thirty-six (36).

  **E.** **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

  **F.** **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7.** **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

  **a.** **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

   **(1)** **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial

motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

       **(2)** **Sentencing Issues:** In the event the Court accepts the plea and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range or to the statutory minimum sentence, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues provided the Court accepts the plea and sentences the defendant to a sentence of at least one-hundred and eighty (180) months of imprisonment. The parties agree that their waiver of all rights to appeal all sentencing issues other than Criminal History will apply even if the applicable Sentencing Guideline range calculated by the Court differs from that advocated by either or both of the parties.

    **b.** **Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **c.** **Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. **OTHER:**

  a.  **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

  b.  **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

  c.  **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. Some of these special conditions may include that defendant not possess a computer or internet access, that defendant not have contact with minors without the authorization of the Probation Officer, that defendant participate in sexual offender counseling and that defendant not maintain a post office box. In addition, as a condition of supervised release, defendant shall initially register with the state sex offender registration in Missouri, and shall also register with the state sex offender registration agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer. The defendant shall comply with all requirements of federal and state sex offender registration laws.

These and any other special conditions imposed by the Court will be restrictions with which defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United

States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

      **d.**    **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

Pursuant to Title 18, United States Code, Section 3014, for offenses occurring on or after May 29, 2015, and before September 30, 2021, the Court is required to impose an assessment of $5,000 on any non-indigent defendant convicted of an offense under Chapter 117 (related to transportation for illegal sexual activity and related crimes, including, but not limited to, 18 U.S.C. 2422(b)).

      **e.**    **Possibility of Detention:** The defendant shall be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

      **f.**    **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Sections 3663, 3663A and 2429, an order of restitution is mandatory for all crimes listed in Sections 3663A(c) and 2429. Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Sections 3663A(b) and 2429 and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full

restitution to all victims of all charges in the indictment without regard to the count or counts to which the defendant has agreed to plead guilty.

9. **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant understands that by pleading guilty, defendant will be subject to federal and state sex offender registration requirements, and that those requirements may apply for life. The defendant understands that defendant must keep said registrations current, shall notify the state sex offender registration agency or agencies of any changes to defendant's name, place of

16

residence, employment, or student status, or other relevant information. Defendant shall comply with requirements to periodically verify in person said sex offender registration information. Defendant understands that defendant will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements. If defendant resides in Missouri following release from prison, defendant will be subject to the registration requirements of Missouri state law. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon release from confinement following conviction. Defense counsel has advised the defendant of the possible sex offender registration consequences resulting from the plea.

Defendant knowingly and voluntary waives any rights and defenses defendant may have under the Excessive Fines Clause of the Eight Amendment to the United States Constitution to the forfeiture of property in this proceeding or any related civil proceeding, special or other assessment, and any order of restitution.

If the defendant is not a U.S. citizen, the guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has

17

completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

**10.  VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11.  CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crimes, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

9/6/2022
Date

*Jillian S. Anderson*
Jillian S. Anderson #53918MO
Assistant United States Attorney

8/5/2022
Date

James Q. Jenkins
Defendant

8/5/2022
Date

Joseph Flees
Attorney for Defendant